We'll turn then to the second case of the morning, Sheila Foster v. State of Minnesota. Excuse me. We'll hear from counsel. Pat Mischiefeller, Your Honor, for the plaintiff. Here today with me is Joe Horn of Augustus & Blue. Very well. You may approach the lectern and proceed. Thank you, Your Honors. May it please the court and counsel, I have reserved five minutes for rebuttal.  Why isn't this claim barred by the statute of limitations? The district court below determined that it needed to rely on the state court's reasoning that the state court's statute of limitations barred the claim. The district court and the federal system felt constrained by that. Problem number one, we believe, is that the timing and accrual of a plaintiff's claim under the United States Constitution is a question of federal law. Of course, we don't even get there if San Remo is controlling it. Well, I'm not sure about that. I think that San Remo's application of preclusion applies. The race judicata issue? Of course. Yes, would you like me to address that first? I certainly can. If you don't prevail on it, lawyers never want to start with what their biggest obstacle is. Okay. I can start with race judicata. Why isn't the case barred by race judicata? Well, the state is correct that a dismissal is a final judgment on the merits under Minnesota law. And Minnesota law is what we look to here for this issue. But this general rule, like most general rules, is subject to a host of exceptions and a wide-ranging ability for the courts to apply and reach what would be a fair or just decision under all of the circumstances. And so we see a lot of case law saying race judicata is a discretionary doctrine, should be applied cautiously, focuses on whether the doctrine would work in injustice, should be invoked only after a careful inquiry because it may govern grounds and defenses not previously litigated and blockaded. That doesn't sound like the Supreme Court in Semtec that I remember. We're talking about full faith and credit? Well, I think what we're talking about, at least our position, Your Honor, is this whole host of case law that says the courts are not constrained by the black-letter race judicata principles where justice requires that they be disregarded. In this case, the primary point that we would like to make is that no court anywhere has ever applied the federal law governing the statute of limitations for a claim of a taking under the United States Constitution. The only analysis that this plaintiff has ever had the benefit of is a state court analysis applying state court principles of the statute of limitations. You mean an action where a Fifth Amendment claim, a state court action where a Fifth Amendment claim was asserted, right? No question. But the issue in our ... That's why San Remo, to me, appears to be controlling. We would ... Because Williamson says, we didn't say you can't do this in state court. If you do it in state court, then that's where the cruel and everything else is brought to bear. Well, there's no question, Your Honor, that that's ... We can accept that and still prevail. How? I'm not saying, oh, disregard that because it's unjust. Well, I think that's precisely what the court is entitled to do. And I think ... Okay. That's your only argument for distinguishing San Remo. Well, other than what's in the brief. I think we had some factual distinctions in the brief. But the point is, Your Honor ... I didn't remember what they were. I haven't seen San Remo until last night. Okay. Well, you know what? I haven't spent a lot of time on San Remo because it's not germane to what we believe is our most significant argue with respect to race judicata. And that is that you have to apply these state court principles of race judicata. And in Minnesota, it is a soft doctrine. It is not a hard letter of the law proposition. And again, this plaintiff has never had the chance to have any judicial analysis of what everyone knows to be the principles that govern whether a claim under the United States Constitution is barred. That's a matter of federal law that we've briefed substantially. And no court has ever passed on that. And we think that it's clear under principles of race judicata that no court is constrained under these circumstances from deciding that, hey, you know, these guys deserve a fair shake. Let's apply and let's walk through the analysis that applies where we have a United States Constitution-based takings claim. And that analysis, this court has recently gone through, very recently, in the supplemental opinion that we submitted to the court, the propane case. And that's an antitrust case. It's called In Re Filled Propane Tank Antitrust Litigation, recent Eighth Circuit authority. And what happens in that case is that we've got this unlawful conspiracy to fix prices. And there's no debate that this conspiracy took place beyond the statute of limitations. It's too old if you're just looking at the conspiracy alone. And the court of appeals, this court of appeals says, well, yeah, that's true. But the conspiracy, the consummation of the conspiracy did not end the unlawful conduct. It started it. And we've got ongoing super competitive sales within the statutory period. And so we have a continuing violation that the plaintiff is entitled to get to the merits on. Because we've got these overt acts, these super competitive sales. And so here, the analogy is, we've got this breathtakingly broad settlement agreement by the state. The state claims that that was the beginning, middle, and end of anything that happened here. But under the principles of a continuing violation as articulated by this court. Let's be more precise. The state says that was the taking. Yes, they say it. And they say- What they're arguing about, the state argues, is not the taking. Well, the state- What they're saying is a taking claim, so- I think I'm- You can deal with their argument as it stands. Yeah, not unusual for me not to be quite following. But I think what you're getting at, at least as I understand it, Your Honor, what I'm talking about is the state's argument on the statute of limitations. They're saying it's not a continuing violation because when the state signed this agreement, long ago, the taking was a fait accompli. We're all done. And it ties into the other- Yes. Even in the antitrust world, if the merger was the violation. Yes. Clayton section seven claim. Yes. The fact that the damages from the merger went on and on and on for decades doesn't matter. The cause of action accrued at the time of the violative merger. But the case, Your Honor, holds- That's my analogy to what the state is saying here. The taking was- Well, that's what they're saying, Your Honor, but the case is to the contrary. The case says- Propane has nothing to do with this. Well, propane, I believe it does, Your Honor, because it says- I think I spent more time on propane than you did. Stick with taking. Okay. The Sherman Act is not the takings clause. Okay. I think, I'm not sure if you're asking me whether or not my position on the continuing violation doctrine or my position on whether there's a taking at all. What's your best case that the state is wrong to say that the taking was the settlement agreement? Well, the taking may have been the settlement agreement, Your Honor, but it was the start of the ongoing annual taking. So my best argument is the facts, which every year they get a check, they keep the whole check. So they're taking a percentage under our pleading that's, and these are over acts. If you had sued within the statute of limitations after the settlement agreement and won, they wouldn't be getting the check. Or they'd be getting the check, but they'd be distributing it differently. That's exactly right. But that would have cut off all of the future of what you're saying is harm and injury. Yes. If you had timely sued and won. Exactly, but what I'm suggesting, Your Honor, is our position that although we haven't sued within that six year time frame or whatever may be the applicable time frame, when we've got facts, when we've alleged a continuing violation, that tolls the statute of limitations, so we're in business. Give me a takings case that plays out this continuing violation theory. We've cited a whole host of those, Your Honor, in our brief. Well, I haven't studied it carefully enough. So I can give you. Well, just tell me the brief pages now. Yeah, let me just. They're all in the brief, that's the, I won't take up more of your time this morning. I appreciate that. I wish I could put my finger on it faster than I'm able to here. I will do that, though. You can do it by letter. Page 14, Your Honor, of the brief where I say, it's the last paragraph, say the continuing violation doctrine has been repeatedly applied in takings cases. And we cite a number of takings cases. And so that's basically the proposition, Your Honor, that under Hanover Shoe and under the propane decision, I know you don't like my application of that here. But the basic proposition is no court has ever applied those federal principles. I know, I know, I know, I know, it's irrelevant. So, I see that I'm already at four minutes. Unless there are some additional questions, I might ask that I reserve my remaining four minutes. You may do so, thank you. All right, thank you. We'll hear from the counsel for the state. Mr. Larson, good morning. You may proceed. Oliver Larson on behalf of the state of Minnesota. Look, this case has been extensively briefed and you have the benefit of a couple of prior decisions as well. So I'm going to be short. I'd like to start actually with the statute of limitations argument. And Judge Loken, to your point, San Marino is not just dispositive on the res judicata issue. It's dispositive on the statute of limitations issues as well. So, the crux, I think the essential failure of the plaintiffs on the statute of limitations analysis, is what they're saying is the statute of limitations cannot begin to run until after they've lost their state court action. Because it's not ripe. The problem with that argument is that their federal cause of action was always ripe. It just wasn't ripe to be pled in federal court. They could have brought it in state court. And in fact, they did. If you go back and look at their state court plea, they pled their federal cause of action in state court. And essentially what they're now saying is that there's something fundamentally unfair about the fact that the application of Williamson on facts like the facts that we have here, means that a plaintiff may be stuck litigating their state and federal claims in state court. Well, Sam Remo addresses that exact issue. And you know what it says? It says tough, essentially is what it says. It says that's what the law requires. And we cited some language from Sam Remo in our brief. But there was some additional language I think is relevant based on what they argued in the reply brief. So I'd like to just, this is at page 346. Sam Remo's addressing this exact argument, and this is what it says. It says, with respect to those federal claims that did require ripening, we reject petitioner's contention that Williamson County prohibits plaintiffs from advancing their federal claims in state courts. It then goes on to say, Williamson does not preclude state courts from hearing, simultaneously, a plaintiff's request for compensation under state law and the claim that, in the alternative, the denial of compensation would violate the Fifth Amendment of the federal constitution. Reading Williamson County to preclude plaintiffs from raising such claims in the alternative would erroneously interpret our cases as requiring property owners to resort to piecemeal litigation or otherwise unfair procedures. So what Sam Remo is saying is, look, if you want to try and divide your claims up, that's fine. You can make an attempt, but your claims are always ripe in state court. So the statute of limitations here on the federal claims started running whenever they started running. In our view, that's 1998. And the fact that they had to go to state court first doesn't do anything with respect to the statute of limitations. Here, the statute of limitations had passed before they filed any action, before they filed their state action, before they filed their federal action. It was dead before they even got into court. And that's really, I think, as difficult as the statute of limitations analysis needs to be. The whole issue of Williamson and ripening is really a red herring. Because they could have brought these actions in state court, the statute of limitations was running, and their time barred. Now, in terms of this idea of continuing violation, we gave you this analogy in the brief. I think it's a good one. Just think of a rental building, right? If the state goes and condemns an apartment building that's generating rents, right? The taking happens when the state seizes the apartment building. A plaintiff can't wait 20 years and then come in and say, well, jeez, you're still collecting rents on that building. Those rents should be mine, and so now I'm going to sue you for takings to collect the rents that you, the state, are now collecting, right? I mean, how the state decided to structure its settlement, the fact that it's still receiving continuing payments, that's all not a part of the taking. That's just how the state elected to structure the payments that it was receiving for whatever it was doing in the settlement agreement. But the claim that the plaintiffs had, if they in fact had one, was extinguished when the settlement agreement was signed. That's what the Supreme Court of Minnesota held. The taking was effected on that date. On that date, they had an ability, in theory, to go in and sue the state for taking. And if they wanted to, they could have started in state court, tried to bifurcate their claims, and then come to federal court if there was something left over. But the claims were extinguished. Just a couple other points that I wanted to hit on briefly. You know, the plaintiffs talk a lot about the Bay Laundry case. It's not really applicable here. Bay Laundry was this odd case where there's this statute that says if you're a participant in kind of one of these collective pension plans and you withdraw, the trustee can essentially, by law, either demand an immediate payment or it can essentially hand you a bill for payments over time. And so the question was, in that scenario, does the statute of limitations start to run when the trustee essentially hands you the document saying you're going to owe money for the next ten years? Or if you fail to pay on the subsequent payments, can the state come in or the trustee come in and sue separately on the missed payments? And the Supreme Court said, you can come in and sue on the separate payments. I think, again, the distinction here is that the plaintiffs, the state didn't take from the plaintiffs a stream of payments, right? The state took a claim. And the fact that it was reduced to a stream of payments was something that the state did in its own settlement agreement. And the state didn't have to do it that way. Now, if we take it outside of the actual claim here, let's say the plaintiffs actually had some contractual right to a stream of payments, an annuity or something like that. And it says somebody's going to pay them $100,000 a year every year for the next 20 years. And the state, one by one, starts coming and picking off those payments year after year. Yeah, there's some continuing violations there. And when the state comes in and picks off next year's or the year after's payment, maybe you can come in and sue on that. But that's not what happened here. They didn't have a right to continuing payments that was lost to the settlement agreement. What they had was a claim, not yet vested, in fact, not even filed yet, that the state extinguished through the settlement agreement. Statute of limitations then runs from the date that that occurred. I'm going to- I want to make sure I understand the claim here. As I understand it, the suit that the state settled was a consumer fraud case, right? It included a variety of claims, but that was one of them, yes. Did the settlement agreement in any way cut off the rights of the individual plaintiffs to file a claim for personal injuries? You mean like a common law kind of remedy? Well, let's say somebody says, I got cancer from smoking. Could they still file that claim? Yes, and- It would cut off their right to file a consumer protection claim. But if somebody said, I smoked for 30 years, it gave me cancer, I want to file a case against the cigarette manufacturer. Could they still do that under the settlement agreement? Yes, and so basically all the, what happened, and if you really want to dig into it, you can look at some of the state court pleadings. But essentially what happened was the Supreme Court later interpreted the release the state gave under the General Consumer Fraud Statute of Minnesota to encompass everybody's claims under that statute. Now what the plaintiffs had lost in the prior class action they brought against Philip Morris, they had filed a consumer fraud cause of action, and in order to proceed with it, they had narrowed it down significantly because they were facing class action problems. And so they couldn't file a common law cause of action because it would require individualized evidence of harm and reliance and things like that. But the consumer fraud statute is quite nice because you can basically just say, well, you engage in a pattern of proactive deceptive conduct, I was somebody who bought your cigarette so I can recover. So they could have pursued a claim for, on the common law remedy, saying I smoked your cigarettes and I got cancer, or whatever else they wanted to pursue. The only thing that the Supreme Court found was released was just their consumer fraud cause of action. The only other issue that I really wanted to talk about a little bit is just the 11th Amendment. And look, you've got sort of a buffet of options here on how to dispose of this case. The district court elected not to get into the 11th Amendment issue. I think that the plaintiffs were able to create enough smoke down at the district court that the district court looked at these issues and said, well, if I'm going to dismiss anyways on restitute the code and on statute of limitations, I don't need to get in the 11th Amendment. But look, the 11th Amendment is jurisdictional. And I do think that there is a distinction between what a district court should be doing and what this court should be doing. And what my concern is, is if we get a decision out of an Eighth Circuit, which has some precedential effect, and it says we're dismissing for one reason or another and doesn't address the 11th Amendment argument, what we're going to then see is people are going to start picking up on this case and start relying on this case for the idea that you can sue a state and federal court on a takings claim. So- Aren't we going to have to then reconcile the 5th and 11th Amendments? Yeah, it's been done for you. I mean, if you look at the case law, we've cited court after court after court, including this court in the Jackson-Solomil case that just said the 11th Amendment trumps. You can't sue a state in federal court for damages. And that is what they're doing, right? They're coming in here and saying that we want a money judgment ultimately from the state for the value of our claims. And so we've cited, I cited I don't know how many cases, seven or eight in a string site for you on the 11th Amendment issue. There's a site from the Eighth Circuit. Many, many courts have looked at that and said the 11th Amendment is dispositive. You cannot sue the state in federal court on a takings claim. You just can't do it. So at minimum, I think this court, if it decides not to address the issue, it should be very clear that that's what it's doing. So that nobody mistakes that this court is somehow resolving the issue if that's not what you're doing. But frankly, given this jurisdictional nature, I would encourage your honors just to look at that. I think you could frankly just cite your Jackson-Solomil case and just dismiss the action on the 11th Amendment. Is the Harn or Harney complaint in the record on appeal? It is. So if you look at the joint appendix page, and I'll point to a specific page that you want to look at, I think for the issues I've discussed. Page 50, that's the state court complaint. And if you look at paragraphs 54 and 60, what you will see there is that in the state court action, the plaintiff explicitly pled a federal cause of action. So we're not, we are not on the preclusion issue dealing with the could have been brought harm of claim preclusion. They did bring it, right, yeah, you're right, it's even worse, I mean, I think- That means that San Remo is directly in point, because I think that was kind of collateral estoppel reasoning, and the fact that it had, in fact, been litigated in state court was noted, if not emphasized, And I don't know that you need to get into any really detailed, complex analysis of San Remo. But if you're interested in it, and you dig into these cases that talk about how you can split your claims, federal and state, it usually has to present some kind of unusual issue. So like the one that I see a lot is Florida, for instance, doesn't recognize regulatory takings. So there's a distinction between a Florida takings count and a federal takings count, because the federal has stronger rights. Here, the other thing the plaintiffs haven't done is point out any difference between their state and federal law claim that there isn't one. It's just a straightforward, you took my claim against Philip Morris and converted it to your own use. There's no nuance in saying that, you know, how is the federal claim different than the state claim? It's not. They're just saying, well, because I have a separate right under federal law, I should be able to bring it in a federal forum. But from a collateral estoppel or res judicata standpoint, the claims are identical on all fours. And again, from your client's, the state's point of view, how should we decide on what basis? Look, I would frankly encourage you to, if I was selecting the menu of options here, I would start with the 11th Amendment, and I probably wouldn't get any further, because it's jurisdictional. If you have any questions, I'm going to sit down. Thank you for your argument. Thank you. May I proceed? Yes, you may, sir. All right, thank you. I'm going to touch briefly, if I could, on San Remo Hotel, Your Honor. I know that you think that's something where we run into trouble on. But what San Remo holds is that, quote, federal courts must apply ordinary preclusion rules to state court judgments when a case is forced into state court by the rightmost rule of Williamson County. I'm not sure that that undercuts our case in any way. As I said previously, when you apply the state court principles that San Remo tells us to, you apply the principles that I mentioned, where there's a lot of flexibility for res judicata. There's a whole body of law following SEMTEC on the extent to which the statute of limitations is, a dismissal in state court on statute of limitations grounds is entitled to, or triggers claim preclusion, because it's a decision on the merits. Now, the opposing counsel's brief seems to quote from a Minnesota case that says, we view that as a disposition on the merits. It is a disposition on the merits, Your Honor, but that does not mean that res judicata precludes a later determination of an issue that has not been addressed by the state court. And those are those host of opinions. It was- Only the state court statute of limitations was addressed by the state- The fact that the state court wrote a less than complete opinion does not affect whether claim preclusion applies on a claim that was specifically raised. I would- Your remedies was to seek either rehearing or ultimately a petition of US Supreme Court for cert. I disagree. I think under Williamson- You have no authority. Williamson tells us, Your Honor, that we have federal jurisdiction after the state court proceeding is finished, and that's what we did so that we could get a federal- San Remo tells us how to apply Williamson. San Remo tells us to apply res judicata by looking to state court principles. I would like to point out, too, this distinction between the past and the future, Your Honors, because it seems to me, to the understanding of the case, this class had a certified tobacco lights class action going. One of those got a $10 billion verdict. So it's a big deal that it got certified. In Curtis, the Minnesota Supreme Court said, Hey, you know, the state has already settled your claim, and the state is keeping all of the money. No consideration is being paid to the class. And so we're contending that's a taking, and there's this whole host of federal case law that says if the government takes a cause of action away, that's a cognizable taking under the federal Constitution. And so the issue becomes then whether we're time barred, and we're not time barred if the continuing violation doctrine applies. Now, on immunity, I would respectfully suggest that the reason there's not one word in the district court's opinion regarding immunity is because it's so clear that immunity doesn't apply here. We've got, in this case, a state statute passed that establishes the tobacco securitization authority. That state statute says that all of this money goes into the tobacco securitization authority, which is outside of the treasury, and also says that the tobacco securitization authority can sue and, more importantly, can be sued. And so that's an express waiver of immunity, and what we had below was an attempt to say by affidavit that, Hey, we don't really operate that way. Well, we don't modify statutes by affidavit, and all it takes is a reading of that statute to dismiss in its entirety this 11th Amendment argument. They waived it by statute. So on that past-future thing on the statute of limitations, I mean, the facts are that every year- Your time is up, but we'll give you two minutes to make your point. I appreciate it, Your Honor. I get talking. The facts are that every year the state gets this check. So how could it possibly be that this check that they're going to get next year has already been taken, that there's already been a taking? It seems to me that it's impossible- You've already made that point. I did? All right, thank you. Unless there are any other questions, I'll conclude. We thank you for your argument. Thank you.